The NATIONAL ASSOCIATION OF REGULATORY UTILITY COMMISSIONERS and the State of Utah Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION Respondent,

Mountain Fuel Supply Company, Mountain Fuel Resources, Inc., Wexpro Company and Celsius Energy Company, Intervenors.

Nos. 83–2491, 84–2108.

United States Court of Appeals, Tenth Circuit.

July 10, 1987.

**1378**

A. Robert Thorup of Ray, Quinney & Nebeker, Salt Lake City, Utah (Paul Rodgers, Gen. Counsel, Charles D. Gray, Asst. Gen. Counsel, Nat. Ass'n of Regulatory Utility Com'rs, Washington, D.C., James S. Jardine of Ray, Quinney & Nebeker, Salt Lake City, Utah, David L. Wilkinson, Atty. Gen. and Craig R. Rich, Asst. Atty. Gen. of the State of Utah, were also on brief), for petitioners Nat. Ass'n of Regulatory Utility Com'rs.

Joanne Leveque, Washington, D.C. (William H. Satterfield, Gen. Counsel, and Jerome M. Feit, Sol., Washington, D.C., were also on brief), for respondent Federal Energy Regulatory Com'r.

Ray G. Groussman, Gen. Counsel, Mountain Fuel Supply Co., Salt Lake City, Utah, Gary G. Sackett, Div. Counsel, Mountain Fuel Resources, Inc., Salt Lake City, Utah, George J. Meiburger, Frank X. Kelly, Peter C. Lesch and Steve Stojic of Gallagher, Boland, Meiberger and Brosnan, Washington, D.C., and Ruland J. Gill, Jr., Wexpro Co., Salt Lake City, Utah, were on brief, for intervenors Mountain Fuel Supply Co., Mountain Fuel Resources, Inc., Wexpro Co., and Celsius Energy Co.

Before HOLLOWAY, Chief Judge, and SEYMOUR and BALDOCK, Circuit Judges.

HOLLOWAY, Chief Judge.

The petitions for review under § 19 of the Natural Gas Act, 15 U.S.C. § 717r, present the principal issue whether Mountain Fuel Supply Company's (Mountain Fuel) transportation of natural gas in interstate commerce through its own pipeline from its producing reserves in Colorado and Wyoming for sale by Mountain Fuel to residential, commercial and industrial users in Utah subjects those producing reserves to the jurisdiction of the Federal Energy Regulatory Commission (the Commission) with respect to the initiation, curtailment, quality, quantity and termination of service in connection with delivery of Mountain Fuel's gas.[1] We hold that the Commission acted properly when it ruled that for such purposes, Mountain Fuel's producing reserves were dedicated to interstate commerce and within its jurisdiction and deny the petitions for review.

## I

### A. Background

Mountain Fuel Supply Company is a natural gas distribution company which makes direct sales of natural gas from its pipeline and through its distribution network to retail customers in Utah, Wyoming, and, apparently, Colorado. J.A. A:3–4. Mountain Fuel operates two high pressure pipelines for moving this gas to its distribution facilities in Utah and Wyoming. Its major high pressure pipeline moves gas from Colorado and Wyoming from the north to its distribution network in Utah. Because this northern pipeline crosses state lines, Mountain Fuel obtained a certificate of public convenience and necessity under § 7 of the Natural Gas Act to operate the line and related facilities.[2] However, the Commission has never exercised jurisdiction over the rates charged for sale or transportation of Mountain Fuel's gas transported in this pipeline because that gas has always been

---

1. Prior to October 1, 1977, the Federal Power Commission administered the Natural Gas Act. Where appropriate, the term "Commission" refers to the Federal Power Commission.

2. *Billings Gas Co.,* 2 F.P.C. 288 (1940); *Mountain Fuel Supply Co.,* 3 F.P.C. 938 (1943).

destined for Mountain Fuel's Utah and Wyoming retail distribution systems.

In the mid 1950's Mountain Fuel acquired and built a second high-pressure pipeline which runs west from the Utah-Colorado border to the southern end of Mountain Fuel's Utah distribution system near Payson, Utah. In 1964 the Commission exempted this pipeline from its jurisdiction pursuant to the Hinshaw Amendment, Section 1(c) of the Act, 15 U.S.C. § 717(c). J.A. A:4; *Mountain Fuel Supply Co.*, 32 F.P.C. 535 (1964). Mountain Fuel originally purchased gas at the Utah-Colorado border from Cascade Pipeline Company to feed into this southern pipeline. However, in 1976 Mountain Fuel Resources Company (Resources), then a wholly owned subsidiary of Mountain Fuel and now a subsidiary of Mountain Fuel's affiliate, Entrada Industries, acquired Cascade, and Resources now makes these sales to Mountain Fuel. *Mountain Fuel Resources, Inc.*, 55 F.P.C. 2322 (1976). Mountain Fuel sells approximately 90 percent of the gas it transports to retail customers in Utah. J.A. A:6. For approximately forty five years Mountain Fuel has met much of its customers' demand by producing its own gas from wells in Colorado and Wyoming.[3] It also purchases gas in the field and along its own pipelines from independent producers and interstate pipelines, J.A. A:2, and commingles this gas together with its own gas in its pipelines for sale to its retail customers.[4]

Mountain Fuel's retail rates in Utah are under the jurisdiction of the Utah Public Service Commission (P.S.C.), but it has also obtained a number of certificates from the Commission under Section 7 of the Act, 15 U.S.C. § 717f, for expansion, extension and modification of its northern pipeline and associated facilities. These certificates are usually needed to allow Mountain Fuel to connect its wells to and transport its gas in its northern pipeline. J.A. A:2–3. However, except in a limited number of instances not pertinent here, the Commission has never regulated the rates for Mountain Fuel's transportation and sale of gas. J.A. A:5.

## B. The Wexpro Controversy

As a result of a dispute, whose substance is not relevant here, with the Division of Public Utilities of the Utah Department of Business Regulation (the Division), the Utah Committee of Consumer Services (the Committee) and the staff of the Wyoming Public Service Commission over the manner in which Mountain Fuel conducted its production activities and allocated exploration costs,[5] Mountain Fuel undertook to reorganize its retail distribution, transmission and production activities along functional lines. To reorganize its production activities, which are the primary focus here, Mountain Fuel made its affiliate, Wexpro Company, a field operator which would conduct production activities on its currently productive oil and gas properties and gave its other wholly-owned subsidiary, Celsius Energy Company, its exploratory drilling activities. J.A. M:3.

On March 7, 1980, Mountain Fuel, Resources, Wexpro and Celsius applied to the Commission for authority under the Natural Gas Act to implement the reorganization. However, before the Commission could act on the applications, Mountain Fuel, the Division, the Committee, and the staff of the Wyoming Public Service Commission entered into a settlement (the Wexpro Settlement) and a stipulation which re-

---

3. As of 1978, Mountain Fuel obtained "over a third" of its natural gas supply from wells which it owned or in which it has an interest. *Mountain Fuel Supply Co.*, Docket No. CP 78–374, 4 FERC ¶ 61,346, at 61,823 (1978).

4. Although most of Mountain Fuel's gas is destined for its own retail distribution network, Mountain fuel has also used its northern and southern pipelines to transport large volumes of natural gas for other interstate pipelines at rates regulated by the Commission. J.A. A:6.

5. The Wyoming Public Service Commission is not a party to this proceeding. The history of this dispute and the resulting litigation in the Utah state court is set out in detail in *Committee of Consumer Services v. Public Service Commission of Utah*, 595 P.2d 871, 878 (Utah 1979), *cert. denied sub nom. Mountain Fuel Supply Co. v. Committee of Consumer Services*, 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 644 (1980).

solved their litigation over Mountain Fuel's production activities. J.A. J:2. Prior to the Wexpro Settlement, Mountain Fuel's own natural gas supply came in part from wells it owned or in which it held an interest, and which produced primarily natural gas, and in part from wells which it owned or in which it held an interest, producing primarily other hydrocarbons. The natural gas reserves underlying these two classes of wells constituted Mountain Fuel's producing reserves and are the subject of this proceeding. Mountain Fuel also had undeveloped and unexplored properties, and Wexpro had acquired other property prior to the settlement, which Mountain Fuel never owned.

In broad terms, under the Wexpro Settlement Mountain Fuel has become a natural gas distribution company, but it retains ownership of wells and related facilities which produce primarily natural gas and the gas from these wells. All the natural gas and liquid hydrocarbon production from these wells remains under the Utah PSC's regulatory jurisdiction. Wexpro owns and operates the leases underlying Mountain Fuel's productive gas wells, and it owns and operates the other productive hydrocarbon wells which Mountain Fuel owned previously. Wexpro sells the gas from the liquid hydrocarbon wells to Mountain Fuel at a cost of service, rather than market rate, and it sells gas from the properties it acquired before the settlement at market rates. Celsius explores those properties not yet in production, giving Mountain Fuel the right to purchase natural gas production at market prices. The Utah

P.S.C. and the Supreme Court of Utah have both approved the Wexpro Settlement.[6]

The Commission was never a party to the Wexpro Settlement or the related stipulation, and neither was ever submitted to the Commission for approval. However, as required by the stipulation, Mountain Fuel amended its applications before the Commission to bring its request for authority to reorganize its production functions into conformity with the stipulation's terms. J.A. M:4.[7]

### C. The Commission's Finding Of Jurisdiction and Order Approving the Reorganization

Utah, Wyoming and the National Association of Regulatory Utility Commissioners intervened in the proceedings before the Commission[8] and moved to dismiss the amended applications for reorganization of production on the ground the Commission has no jurisdiction over Mountain Fuel's own production and related facilities or over leasehold and property interests owned by Mountain Fuel and its affiliates, Wexpro and Celsius. After requesting briefs on the jurisdictional issue, *Mountain Fuel Supply Co.*, 21 FERC ¶ 61,316, (1982), J.A. M, the Commission, on July 22, 1983, ruled, over the dissent of one commissioner, that:

> ... Mountain Fuel's pipeline production, which flows and is transported in interstate commerce, and all leasehold and property interests associated with that production are dedicated to interstate commerce and are subject to our jurisdiction under the Natural Gas Act except to

---

**6.** The Utah Supreme Court summarized the terms of the agreement in *Utah Department of Administrative Services v. Public Service Commission*, 658 P.2d 601, 606–07 (Utah 1983). *See also* J.A. A:7–9.

**7.** In addition to authority to reorganize Mountain Fuel's production functions as outlined in the stipulation, Mountain Fuel sought authority to reorganize its transmission activities by allowing Resources (1) to acquire Mountain Fuel's northern pipeline and Hinshaw-exempt southern pipeline, (2) to succeed to Mountain Fuel's right to purchase gas from independent producers and interstate pipelines, and (3) to sell natural gas to Mountain Fuel for resale to its retail

customers in interstate commerce and to transport natural gas for Mountain Fuel and others in interstate commerce. J.A. A:9–10. Petitioners do not contest the Commission's jurisdiction over or granting of these authorizations.

**8.** Utah was substituted in place of the Division and the Committee, both of which had earlier intervened before the Commission but then withdrew from the proceedings in favor of the State, J.A. L:7–8; M:20, and NARUC intervened to contest the Commission's jurisdiction, seeking, it said, "to insure that the jurisdictional boundaries separating the state and Federal regulatory spheres are respected." J.A. M:19.

the extent that Section 601(a)(1) of the [Natural Gas Policy Act] eliminates the Commission's Natural Gas Act jurisdiction for certain first sales. All leasehold and property interests, which contain only undeveloped natural gas reserves, are not subject to our jurisdiction under the Natural Gas Act.

*Mountain Fuel Supply Co.*, 24 FERC ¶ 61,120; J.A. A:10.

The Commission denied a timely petition of Utah and NARUC for rehearing, *Mountain Fuel Supply Co.*, 24 FERC ¶ 61,321 (1983), and, in No. 83–2491, NARUC petitions this court for review of the Commission's order. Utah also filed a petition for review of the Commission's order, but this court dismissed that petition as untimely.

The Commission referred the amended production reorganization applications to the Presiding Administrative Law Judge, who approved the reorganization. Utah and NARUC reserved their position on the jurisdictional issue but did not oppose the reorganization on substantive grounds. The Commission affirmed the ALJ's initial decision. FERC Opinion 221, 27 FERC ¶ 61,316, *reh. denied*, 28 FERC ¶ 61,108 (1984); J.A. Q:9–10, 49, R. In No. 84–2108, Utah timely petitions this court for review of the Presiding ALJ's order, contesting only the Commission's jurisdiction over Mountain Fuel's natural gas production and natural gas producing properties. The two review proceedings were consolidated and Mountain Fuel, Resources, Wexpro and Celsius have intervened on the side of the Commission, which is the respondent in both cases.

## II

■ Before considering the merits of petitioners' attack on the Commission's assertion of jurisdiction over the producing reserves, we must determine whether petitioners are "aggrieved" within the meaning of § 19(b) of the Act, 15 U.S.C. § 717r(b).[9] The Commission and the intervenors argue that since Utah was a party to the Wexpro Settlement and the Commission approved all aspects of the reorganization which it found to be within its jurisdiction, petitioners are not aggrieved and may not petition for review of the Commission's orders. Respondent's Brief at 30; Intervenors' Brief at 5.

"Any party to a proceeding under [the Act] aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals ...." Natural Gas Act, § 19(b), 15 U.S.C. § 717r(b). "[A]ggrievement within the meaning of § 19(b) 'is a status conferred by Congress upon a party who ... is likely to suffer injury' by an administrative determination, and ... 'aggrievement must be present and immediate, or at least must be demonstratively a looming unavoidable threat.'" *Sunray DX Oil Co. v. FPC*, 351 F.2d 395, 400 (10th Cir.1965), *quoting City of Pittsburgh v. FPC*, 237 F.2d 741, 746 (D.C.Cir.1956) and *Cincinnati Gas & Electric Co. v. FPC*, 246 F.2d 688, 694 (D.C.Cir. 1957) (footnotes omitted).

■ While petitioners are not challenging the terms of the Wexpro Settlement, they are attacking the Commission's ruling that it has jurisdiction over Mountain Fuel's producing reserves, which was the

9. Petitioners say respondents may not raise the alleged lack of aggrievement because respondents stipulated before the Commission that petitioners' jurisdictional argument would not be challenged on the ground petitioners "participated substantively" in the hearing on the merits. Petitioners say the stipulation was intended to preserve the jurisdictional issue for review before this court and that respondents are therefore estopped from making their lack of aggrievement argument. J.A. Y:Doc. 2:1; Reply Brief at 19.

Assuming that the stipulation would otherwise bar petitioners' raising the aggrievement issue, the parties "may not by stipulation invoke

the judicial power of the United States in litigation which does not present an actual 'case or controversy'." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 7–8, 98 S.Ct. 1554, 1559, 56 L.Ed.2d 30 (1978), *quoting Sosna v. Iowa*, 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975). *See also Phillips Petroleum Co. v. FPC*, 475 U.S. 842, 847 (10th Cir.1973), *cert. denied sub nom. Chevron Oil Co. v. FPC*, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974) (despite agreement by the parties that review of a Commission order is desireable, "[t]his court is obligated ... to view the condition and determine for itself that there is jurisdiction to determine the case").

basis for the Commission proceeding to approve those portions of the reorganization relating to the reserves. The State of Utah argues that when state jurisdiction is challenged by the Commission, aggrievement is present; that there is a "compelling controversy for this Court to set right the jurisdictional balance skewed by the Commission's action." Joint Reply Brief at 3.

We agree that the petitioners are aggrieved sufficiently to maintain these review proceedings. The Commission's jurisdictional ruling as to the reserves is binding and conclusive on the parties before the Commission, and may not be attacked by them collaterally. *See Insurance Corp. v. Compagnie Des Bauxites*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982) ("It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal"); *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 376, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 175, 177, 59 S.Ct. 134, 139, 140, 83 L.Ed. 104 (1938). We have held that the proper mode for challenging such a jurisdictional decision is by a direct attack in a review proceeding. We said that a party may not collaterally attack the validity of a prior agency order in a subsequent proceeding; that the principles of collateral estoppel may properly be applied in administrative cases; and that "[t]hese principles apply to jurisdictional issues." *McCulloch Interstate Gas Corp. v. FPC*, 536 F.2d 910, 913 (10th Cir.1976).

Thus, even though the Commission's jurisdictional ruling "required no affirmative action" by petitioners, and did not "require" petitioners "to refrain from anything [they] might wish to do," *Amerada Petroleum Corp. v. FPC*, 285 F.2d 737, 739 (10th Cir.1960), the res judicata effect of that ruling does make petitioners aggrieved parties within the meaning of Section 19(b) of the Act. *Cf. Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 281–83, 66 S.Ct. 1105, 1109–10, 90 L.Ed. 1230 (1946) (in dispute over interpretation of a labor contract, although no judgment or relief was ordered against intervenor—

union, the union had an "appealable interest" and therefore right to appeal because "if the union had thereafter instituted a separate suit for an interpretation of the agreement, it would be met with the plea of *res judicata* ").

## III

"The standard of review on a jurisdictional decision of the FERC is whether the decision was without an adequate basis in law." *Alexander v. FERC*, 609 F.2d 543, 546 (D.C.Cir.1979); *see also Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 678, 74 S.Ct. 794, 797, 98 L.Ed. 1035 (1954); *Louisiana Land & Exploration Co. v. FERC*, 574 F.2d 204, 207 (5th Cir.), *reh. denied*, 579 F.2d 971 (5th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 88 (1979). The Commission's holding that Mountain Fuel's reserves producing gas which is transported in interstate commerce are subject to the Commission's jurisdiction and dedicated to interstate commerce, J.A. A:10, rests primarily on its legal conclusion that:

> Once an interstate pipeline develops natural gas properties and commences the flow of natural gas in interstate commerce from those properties under its existing certificates, which, in this case, authorize the transportation in interstate commerce of natural gas for purposes of sales in two states and which definitely recognize that the transportation will include transportation of the pipeline's own production, that natural gas is dedicated to interstate commerce and is subject to our jurisdiction.

J.A. A:11.

Petitioners challenge this jurisdictional ruling. They argue that Mountain Fuel's producing reserves are not dedicated to interstate commerce because Mountain Fuel does not make sales in interstate commerce for resale. Mountain Fuel makes such sales, but they are to customers for consumption. Petitioners' Brief at 24–30. They also contend that Mountain Fuel has no federal service obligation to deliver its producing reserves into interstate com-

merce for sale to its Utah retail customers. Petitioners' Brief at 30–34. "The only federal 'service' obligation affixed to Mountain Fuel is the distinguishable obligation of the Northern System to transport any and all natural gas delivered to its mouth by Mountain Fuel into Mountain Fuel's distribution systems." Petitioners' Brief at 32. We disagree with petitioners' jurisdictional analysis and uphold the Commission's ruling under the terms of the Act, its interpretation by the Supreme Court, and policy considerations which favor the Commission's position.

**A**

We are instructed that "a *need* for federal regulation does not establish FPC jurisdiction that Congress has not granted." *Louisiana Power & Light Co.*, 406 U.S. 621, 635–36, 92 S.Ct. 1827, 1836, 32 L.Ed.2d 369 (1972). Therefore, we must first determine whether Congress granted the Commission jurisdiction over Mountain Fuel's producing reserves by the terms of the Act.

In addition to jurisdiction over sales of natural gas in interstate commerce for resale and "natural-gas companies," 15 U.S.C. § 717(b), the Act's grant of "broad powers," *FPC v. Louisiana Power & Light Co.*, 406 U.S. at 631, 92 S.Ct. at 1833, "gives the Commission jurisdiction over interstate transportation of natural gas as a separate and distinct matter, whether the transportation is for hire or for sale and whether the sale is for consumption or for resale." *United Gas Pipe Line Co. v. FPC*, 385 U.S. 83, 89, 87 S.Ct. 265, 269, 17 L.Ed.2d 181 (1966). *See also FPC v. Louisiana Power & Light Co.*, 406 U.S. at 636, 92 S.Ct. at 1836 ("[T]he Act applies to interstate 'transportation' regardless of whether the gas transported is ultimately sold retail or wholesale").[10]

It is true that the statute's jurisdictional grant does not explicitly refer to the producing reserves from which natural gas is drawn before being transportated in interstate commerce for sale. However in *United Gas Pipe Line v. FPC*, the Court pointed to the Commission's authority granted in § 16 for the Commission to perform any and all acts and to issue orders, rules and regulations necessary to carry out the provisions of the statute. 385 U.S. at 90, 87 S.Ct. at 269. Continental Oil Company terminated its natural gas sales contract with United Gas Pipe Line Company and filed a rate increase with the Commission. After the Commission accepted the filing, over United's protest, United ceased accepting gas from the field affected by the rate increase. The Commission ordered United to recommence purchasing and accepting deliveries from the field at the new rate but at the volumes set out in the prior contract.

In challenging the Commission's order before the Supreme Court, United argued that the Commission exceeded its jurisdiction when it ordered United to continue purchasing gas because the Act did not give the Commission authority to regulate such natural gas purchases. The Court disagreed:

It is true that the Act does not in so many words grant the same express authority over purchases to the Commission that it does over sales. Neither is there a blanket exemption of Commission jurisdiction over the purchase of gas, and there is express authority over transpor-

---

**10.** Section 1(b) of the Act provides as follows: The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.

The Supreme Court has recognized that "§ 1(b) made the Natural Gas Act applicable to three separate things: '(1) the transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale'". *FPC v. East Ohio Gas Co.*, 338 U.S. 464, 468, 70 S.Ct. 266, 268, 94 L.Ed. 268 (1950), *quoting Panhandle Eastern Pipeline Co. v. Public Service Commission*, 332 U.S. 507, 516, 68 S.Ct. 190, 195, 92 L.Ed. 128 (1947)

tation as well as sale. Under § 16, the Commission has the power 'to perform any and all acts, and to ... issue ... such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this Act.' [citation] Where it is necessary to regulate the purchase of gas in some respects to carry out its expressly granted authority over transportation and sale, the Commission must have the power to do so.... *Undoubtedly, the continued purchase of gas has been ordered but only as an incident to regulating transportation or sale.*

385 U.S. at 89–90, 87 S.Ct. at 269. (Emphasis added). The Court referred specifically to the Commission's authority to prevent the cessation of the "taking and transporting" of gas through United's facilities. *Id.* at 88, 87 S.Ct. at 268.

Again in *FPC v. Louisiana Power & Light Co.,* 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972), the Court discussed the importance of the transportation branch of the Commission's jurisdiction. The Court noted that the grant of sales jurisdiction and the prohibition of authority as to direct sales were meant to apply exclusively to rate setting, and in no way limited the broad grant of "transportation" jurisdiction to the Commission. *Id.* at 640, 92 S.Ct. at 1838. Further the Court pointed out that comprehensive and equitable curtailment plans for gas transported in interstate commerce "are practically beyond the competence of state regulatory agencies." *Id.* at 641, 92 S.Ct. at 1839. Further, the Court noted that it had already stated the view that curtailment plans are aspects of the Commission's "transportation" and not its "sales" jurisdiction, quoting *Panhandle Eastern Pipe Line Co. v. Public Service Commission,* 332 U.S. 507, 523, 68 S.Ct. 190, 198, 92 L.Ed. 128 (1947), where the Court stated:

[T]he matter of interrupting service is one largely related ... to transportation and thus within the jurisdiction of the Federal Power Commission to control, in accommodation of any conflicting interests among various states.

The reasoning concerning the transportation facet of the Commission's jurisdiction applies here. As the Commission here found, "[i]f Mountain Fuel were simply to cease taking and transporting natural gas from its properties ... Mountain Fuel would be abandoning transportation service authorized by the Commission." J.A. A:17. Petitioners' position that productive gas reserves are jurisdictional facilities only for purposes of sales jurisdiction, and not for transportation jurisdiction, and that the Commission's authority is confined to "the pipe, pumping stations and similar items," Petitioners' Brief at 26, as well as their argument that Mountain Fuel's obligation to transport the gas from its producing reserves in its certificated pipeline is not a federal service obligation, Petitioners' Brief at 30–34, would seriously undermine the Commission's authority to regulate the transportation service for which it certificated Mountain Fuel's northern pipeline.

The petitioners' arguments misconstrue the structure of the Act. The Court has said that "all the matters for which a certificate is required—the construction of facilities or their extension, as well as the making of jurisdictional sales—must be justified in terms of a 'service' to which they relate." *Sunray Oil v. F.P.C.,* 364 U.S. 137, 150, 80 S.Ct. 1392, 1400, 4 L.Ed.2d 1623 (1960). In discussing the need to obtain permission before discontinuing service subject to the Commission's sale for resale jurisdiction, the Court has said that "the Commission's 'legal control over the continuation of service' ... is a fundamental component of the regulatory scheme. To deprive the Commission of this authority, even in limited circumstances, would conflict with the basic policies underlying the Act." *United Gas Pipeline Co. v. McCombs,* 442 U.S. 529, 538, 99 S.Ct. 2461, 2467, 61 L.Ed.2d 54 (1979). *See also California v. Southland Royalty,* 436 U.S. 519, 526, 98 S.Ct. 1955, 1959, 56 L.Ed.2d 505 (1978) (The provisions of a contract allowing termination of natural gas deliveries after a fixed term must give way to the service obligations of the Act; "otherwise producers and pipelines would be free to make arrangements that would circumvent

the ratemaking and supply goals of the statute").

This principle applies with equal force to the Commission's authority as to transportation. *See United Gas Pipe Line Co. v. FPC,* 385 U.S. at 89, 87 S.Ct. at 269 ("[T]he term 'service' is not confined to sales but extends to the 'movement of gas in interstate commerce' and ... one who engages in either the sale or the transportation of gas is performing a service within the meaning of both §§ 7(e) and 7(b)"). The service Mountain Fuel provides with its Commission-certificated pipelines here is interstate transportation of natural gas for retail sale to its Utah customers.[11] Petitioners' narrow construction of the Commission's transportation jurisdiction in this case would weaken the Commission's control over Mountain Fuel's transportation service. If the Commission's authority were limited as petitioners suggest, "the

Commission's 'legal control over the continuation of service,'" *United Gas Pipeline Co. v. McCombs,* 442 U.S. 529, 538, 99 S.Ct. 2461, 2467, 61 L.Ed.2d 54 (1979), would be significantly weakened.

■ We hold that the Act grants the Commission jurisdiction over Mountain Fuel's producing natural gas reserves outside of Utah, from which gas has been taken for interstate transportation and sale to Mountain Fuel's customers, as to the "initiation, curtailment, quality, quantity, and termination" of delivery of gas for its interstate transportation, and sale, as the Commission decided here. This is a reasonable and proper interpretation of the Act as to the Commission's "jurisdiction over interstate transportation of natural gas as a separate and distinct matter." *United Gas Pipeline Co. v. FPC,* 385 U.S. at 89, 87 S.Ct. at 269.[12] In sum, the language of the

11. The fact that the gas in this case is to be sold to Mountain Fuel's retail customers for consumption distinguishes this controversy from *Public Service Electric & Gas Co. v. FPC,* 371 F.2d 1 (3d Cir.), *cert. denied,* 389 U.S. 849, 88 S.Ct. 33, 19 L.Ed.2d 119 (1967), where the issue was whether Texaco needed a certificate of public convenience and necessity to transport its natural gas through Transcontinental's Commission certificated pipeline from Texaco's reserves in the Gulf coast area to Texaco's New Jersey refinery for its own use as industrial fuel. Even though Texaco's gas was commingled with gas which Transcontinental purchased for resale in interstate commerce, the court upheld the Commission's conclusion that it did not have jurisdiction over Texaco's gas. Texaco contracted with Transcontinental for "conventional transportation service for which [Transcontinental] was to receive a fixed charge per MCF of gas transported." The court said the case did not involve "a jurisdictional sale for either consumption or resale." 371 F.2d at 5.

Here Mountain Fuel is not transporting its gas in interstate commerce for its own use, but is selling the gas to customers for their use. This case involves not transportation for hire as in *Public Service Electric & Gas,* but transportation for sale, and the need to protect third party consumers supports the Commission's assertion of jurisdiction over Mountain Fuel's producing reserves, in addition to the pipelines in which the gas is transported.

12. Petitioners cite *Shell Oil Co. v. FERC,* 566 F.2d 536 (5th Cir.1978), *aff'd. by equally divided court,* 440 U.S. 192, 99 S.Ct. 1273, 59 L.Ed.2d 247 (1979), in support of their argument that the

Commission's jurisdiction over Mountain Fuel's interstate transportation facilities does not impose on Mountain Fuel a federal service obligation which dedicates its producing reserves to interstate commerce. In *Shell Oil,* the Fifth Circuit ruled that the Commission could not rely on "the concept expressed as 'service' in the Natural Gas Act" to impose an implied "'prudent operator' obligation" on the certificates of public convenience and necessity required under the Act. 566 F.2d at 538–39. The court held that to allow the Commission jurisdiction to impose the prudent operator standard on certificate holders "would all but eliminate the 'production or gathering' exclusion and would allow the FERC to encroach on areas reserved to the states." 566 F.2d at 540. (footnote omitted).

Here the Commission is not asserting jurisdiction over "the activity of producing or gathering natural gas," *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 603, 65 S.Ct. 829, 839, 89 L.Ed. 1206 (1945), but is asserting jurisdiction as to Mountain Fuel's service of delivering gas from its reserves into its pipeline for interstate transportation to its retail customers in Utah. This analysis also distinguishes *FPC v. Panhandle Eastern Pipe Line Co.,* 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499 (1949), which petitioners rely on. Petitioners' Brief at 24–25. In *Panhandle Eastern,* the Court held that the production or gathering exemption of § 1 excluded from the Commission's jurisdiction the sale by an interstate pipeline of its *undeveloped* reserves to a production company it had organized. 337 U.S. at 507–09, 69 S.Ct. at 1257–58. However, in *United Gas Co. v. Continental Oil Co.,* 381 U.S. 392, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965), the Court held that the sale of "proven and substan-

Act and its interpretation by the Supreme Court sustain the jurisdictional ruling. That ruling is also supported by important policy considerations underlying the Act, to which we now turn.

**B**

"The fundamental purpose of the Natural Gas Act is to assure an adequate and reliable supply of natural gas at reasonable prices." *California v. Southland Royalty Co.*, 436 U.S. 519, 523, 98 S.Ct. 1955, 1957, 56 L.Ed.2d 505 (1978). However, although "[t]he Commission's primary purpose under the Natural Gas Act is to protect the consumer, ... [i]t must also strive to reach a balance between the consumer, producer, and those whose interests fall in between." *Mesa Petroleum Co. v. FPC*, 441 F.2d 182, 186 (5th Cir.1971); *see also, FPC v. Panhandle Eastern Pipe Line Co.*, 337 U.S. 498, 513, 69 S.Ct. 1251, 1260, 93 L.Ed. 1499 (1949) ("Congress enacted this Act after full consideration of the problems of production and distribution[;] [i]t considered the state interests as well as the national interest[;] [i]t had both producers and consumers in mind").

"[T]o protect consumers against exploitation at the hands of natural gas companies," *FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 631, 92 S.Ct. 1827, 1833, 32 L.Ed.2d 369 (1972), *quoting FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 610, 64 S.Ct. 281, 291, 88 L.Ed. 333 (1944), "Congress 'meant to create a comprehensive and effective regulatory scheme' ... of dual state and federal authority." *FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 631, 92 S.Ct. 1827, 1833, 32 L.Ed.2d 369 (1972), *quoting Panhandle Eastern Pipe Line Co. v. Public Service Commission*, 332 U.S. 507, 520, 68 S.Ct. 190, 197, 92 L.Ed. 128 (1947). "Although federal jurisdiction was not to be exclusive, FPC regulation was to be broadly complimentary to the States, so that there would be no 'gaps' for private interests to subvert the

public welfare." *FPC v. Louisiana Power & Light Co.*, 406 U.S. at 631, 92 S.Ct. at 1833.

The bill which ultimately became the Natural Gas Act was intended to provide federal regulation of those aspects of natural gas sales and transmission which the Commerce Clause would not allow the states to regulate:

> The primary purpose of the pending bill is to provide Federal regulation, in those cases where the State commissions lack authority, under the interstate commerce law. This bill takes nothing from the State commissions; they retain all the State power they have at the present time. This bill would apply to the transportation of natural gas in interstate commerce and to the sale of natural gas in interstate commerce for resale or public consumption.

*FPC v. Panhandle Eastern Pipe Line Co.*, 337 U.S. at 511 n. 15, 69 S.Ct. at 1258–60 n. 15, *quoting* 81 Cong.Rec. 6721 (July 1, 1937) (remarks of Rep. Lea, Chairman of the House Committee on Interstate and Foreign Commerce).

To help determine the boundaries of state and federal authority under the Act, the Supreme Court has established the following framework:

> [W]hen a dispute arises over whether a given transaction is within the scope of federal or state regulatory authority, we are not inclined to approach the problem negatively, thus raising the possibility that a 'no man's land' will be created.... [I]n a borderline case where Congressional authority is not explicit we must ask whether state authority can practicably regulate a given area and, if we find that it cannot, then we are impelled to decide that federal authority governs.

*FPC v. Louisiana Power & Light Co.*, 406 U.S. at 631, 92 S.Ct. at 1833, *quoting FPC v. Transcontinental Gas Corporation*, 365

---

tially developed gas reserves" fell under the Commission's sale for resale jurisdiction, limiting the production and gathering exemption to undeveloped reserves such as those in *Panhandle Eastern*. The Commission has recognized

that the same distinction applies here and has limited its jurisdiction to Mountain Fuel's developed reserves whose gas is being transported in interstate commerce for sale to consumers. J.A. A:29–30.

U.S. 1, 19–20, 81 S.Ct. 435, 445, 5 L.Ed.2d 377 (1961).

Petitioners contend that Utah has regulated Mountain Fuel's producing reserves in the interests of its natural gas consumers for many years without difficulty. Petitioners' Brief at 34. However, in considering the interests of producers and consumers the Commission found:

> The interests of Colorado in natural gas produced by Mountain Fuel in that state but consumed in other states, interests which are not represented here, are certainly different than the interests of Utah and Wyoming as consumers of that natural gas. The interests of Wyoming in natural gas produced by Mountain Fuel in Wyoming but consumed in both Wyoming and Utah are certainly different than the interests of Utah as a consumer of that natural gas. The interests of both producing and consuming states are involved. No one state is in a position to balance these interests.

J.A. A:19 (footnote omitted).

Supreme Court decisions indicate that the Commerce Clause restricts the power of the States to limit or regulate the flow of natural gas from within their borders to protect their own interests. *Pennsylvania v. West Virginia,* 262 U.S. 553, 596–97, 43 S.Ct. 658, 664–65, 67 L.Ed. 1117 (1923); *see Hood & Sons v. DuMond,* 336 U.S. 525, 535, 69 S.Ct. 657, 663, 93 L.Ed. 865 (1949). Congress was well aware of this limitation when it enacted the Natural Gas Act. Hearings Before a Subcommittee of the House Committee on Interstate and Foreign Commerce on H.R. 11662, 74th Cong., 2d Sess. 14 (1936).[13]

The Supreme Court has addressed similar policy considerations, concluding that "when we are presented with an attempt by the federal authority to control a problem that is not, by its very nature, one with which state regulatory commissions can be expected to deal, the conclusion is irresistible that Congress desired regulation by federal authority rather than non-regulation." *Louisiana Power & Light Co.,* 406 U.S. at 641, 92 S.Ct. at 1838, *quoting Transcontinental Gas Pipe Line Corp.,* 365 U.S. at 28, 81 S.Ct. at 450. Here, "[t]he desireability of uniform federal regulation is abundantly clear." 406 U.S. at 634–35, 92 S.Ct. at 1836.

In addition, we note that the continuing availability of the producing reserves is a critical factor to the Commission in exercising its authority over transportation activities such as those of Resources. The Commission has long held that the supply of gas available for transportation in the proposed facilities is an essential factor in determining whether the proposed facilities serve the public convenience and necessity. As early as 1939, the Commission stated:

> [A]pplicants who contend that 'public convenience and necessity' require or will require the construction of facilities for the transportation of natural gas must show that they possess a supply of natural gas adequate to meet those demands which it is reasonable to assume will be made upon them. It is obvious that the public convenience and necessity would not be served by certificating an applicant who had an insufficient supply of the product which it proposes to make available to the public.

*Kansas Pipe Line & Gas Co.,* 2 F.P.C. 29, 40 (1939). *See also Texas Gas Transmission Corp.,* 11 F.P.C. 227, 265 (1952), *quoting Michigan-Wisconsin Pipe Line Co.,* 8 F.P.C. 293, 299 (1949) ("While we are not required to determine with preciseness the volumes of gas available to an applicant for a certificate of public convenience and necessity, there must be sufficient evidence before us in the record to enable us to find with reasonable certainty that the dedicated gas reserves will enable the rendition of the authorized service for a period of years sufficient to justify the project from the standpoint of both consumer and

---

13. Petitioners claim there would be no interstate conflict because Colorado has no interest in Mountain Fuel's Colorado production. Petitioners' Brief at 43–44. It is true that Colorado has asserted no interest in this dispute. However, the mere fact Colorado has not asserted such an interest now does not mean it will not have one in the future which it may wish to press before the Commission.

investor"); 18 C.F.R. 157.14(a)(10) (applications before the Commission must include "[a] statement of total gas supply committed to, controlled by, or possessed by applicant which is available to it for the acts and services proposed"). *Accord: Public Service Commission of West Virginia v. FPC*, 437 F.2d 1234, 1237 (4th Cir.1971) (The FPC "was required only to consider the adequacy of Mountain's gas supply to furnish the service which it sought authority to render"). In certificating Mountain Fuel's proposed facilities to transport its own production, the Commission has repeatedly taken into account the supply of gas available to serve these facilities. *See, e.g., Mountain Fuel Supply Co.*, Docket No. CP 78–360, 4 FERC ¶ 61,200 (1978); Docket No. CP 76–233, 55 F.P.C. 2101, 2102 (1976).

In sum, policy considerations of paramount importance strongly favor the Commission's ruling as to its jurisdiction over the producing reserves. Thus, the terms of the Act, its interpretation by the Supreme Court, and these policy considerations convince us that the Commission did not err in its jurisdictional ruling.

## IV

Petitioners' final argument is that Section 601(a)(1)(A) of the Natural Gas Policy Act, 15 U.S.C. § 3431(a)(1)(A), now excludes the gas reserves at issue from the Commission's Natural Gas Act jurisdiction.

Section 601(a)(1)(A) provides:

For the purposes of Section 1(b) of the Natural Gas Act, effective on the first day of the first month beginning after November 9, 1978, the provisions of the Natural Gas Act and the jurisdiction under such Act shall not apply to natural gas which was not committed or dedicated to interstate commerce before the date of the enactment of this Act solely by reason of any first sale of such natural gas.

Petitioners argue that, since "none of the [gas] reserves or leases transferred to Wexpro in 1982 were subject to any contract of sale for resale" before November 8, 1978, the cutoff date under the N.G.P.A. or "ever subject to a certificate for sales for resale," the reserves were never dedicated or committed to interstate commerce within the meaning of the Natural Gas Act, so that § 601 of the N.G.P.A. excludes them from the Commission's N.G.A. jurisdiction. Petitioner's Brief at 39–40.

We disagree. The N.G.P.A. defines "committed or dedicated to interstate commerce" in terms of "natural gas which, if sold, would be required to be sold in interstate commerce (within the meaning of the Natural Gas Act)...." N.G.P.A. § 2(18)(A), 15 U.S.C. § 3301(18)(A). As we have now held, even though Mountain Fuel's gas reserves were never subject to a contract of sale for resale in interstate commerce and no certificate therefor was issued under § 7, such a contract and certificate were not necessary to establish Commission jurisdiction in light of the transportation facet of the Commission's authority. Since Mountain Fuel transported gas from these reserves in interstate commerce for direct sale to its Utah customers prior to December 1, 1978, those reserves were dedicated "within the meaning of the Natural Gas Act" on that date.[14]

## V

We are convinced that the petitioners are aggrieved sufficiently to pursue these review proceedings but that they have demonstrated no error in the Commission's orders. Accordingly the petitions for review are

DENIED.

---

14. As the Commission acknowledges, its Natural Gas Act jurisdiction does not extend to "natural gas production from leases containing no wells which produced or could have produced natural gas on November 8, 1978, and natural gas production which qualifies for pricing under Sections 102(c), 103(c) and 107(c)(1)–(4) of the NGPA." J.A. A:23.