PUBLISH

**UNITED STATES COURT OF APPEALS**

Filed 12/23/96

**TENTH CIRCUIT**

---

FIRST NATIONAL OIL, INC.,

       Petitioner,

  v.

FEDERAL ENERGY REGULATORY
COMMISSION,

       Respondent.

------------------------

PANHANDLE EASTERN PIPE LINE
COMPANY; INDIANA GAS COMPANY, INC.;
OKLAHOMA INDEPENDENT PETROLEUM
ASSOCIATION; PANHANDLE FIELD
SERVICES COMPANY; COLORADO
INTERSTATE GAS COMPANY,

       Intervenors.

No. 95-9531

---

FIRST NATIONAL OIL, INC.,

       Petitioner,

   v.

FEDERAL ENERGY REGULATORY
COMMISSION,

       Respondent.

------------------------

COLORADO INTERSTATE GAS COMPANY;
INDIANA GAS COMPANY, INC.; CITIZENS
GAS & COKE UTILITY; PANHANDLE FIELD
SERVICES COMPANY; PANHANDLE
EASTERN PIPE LINE COMPANY;
OKLAHOMA INDEPENDENT PETROLEUM
ASSOCIATION; EAST OHIO GAS COMPANY;
PANHANDLE CUSTOMER GROUP;
MICHIGAN CONSOLIDATED GAS
COMPANY,

       Intervenors.

No. 95-9553

---

**APPEAL FROM ORDERS OF THE FEDERAL
ENERGY REGULATORY COMMISSION
(NOS. CP90-1050-000, -001, -002, -006, AND CP94-151-004)**

---

Maria M. Seidler, Tulsa, Oklahoma, for Petitioners.

Edward S. Geldermann, Attorney (Susan Tomasky, General Counsel; Jerome M. Feit, Solicitor; and Joseph S. Davies, Deputy Solicitor, with him on the briefs), Federal Energy Regulatory Commission, Washington, D.C., for Respondents.

Brian D. O'Neill, LeBoeuf, Lamb, Greene & MacRae, Washington, D.C. (David P. Sharo, LeBoeuf, Lamb, Greene & MacRae, Washington, D.C.; Merlin E. Remmenga, Panhandle Eastern Pipe Line Company, Houston, Texas; and Dennis J. Kelly, Panhandle Field Services Company, Denver, Colorado, with him on the briefs), for Intervenors.

---

Before **SEYMOUR**, **ANDERSON**, and **BRORBY**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Petitioner First National Oil, Inc. ("First National") seeks review of certain orders issued by the Federal Energy Regulatory Commission ("FERC" or "Commission"). See Panhandle Eastern Pipe Line Co., 70 F.E.R.C. ¶ 61,178 (preliminary determination on abandonment application and declaration of jurisdictional status of facilities), modified, 71 F.E.R.C. ¶ 61,201 (1995); Panhandle Eastern Pipe Line Co., 71 F.E.R.C. ¶ 61,336 (order authorizing refunctionalization and abandonment of facilities), reh'g denied, 73 F.E.R.C. ¶ 61,137 (1995). First National contends that the Commission improperly permitted Panhandle Eastern Pipe Line Company ("Panhandle") to abandon certain natural gas gathering facilities by "spinning down" those facilities to its wholly-owned subsidiary, Panhandle Field Services Company ("Field Services"). We hold that First National lacks standing to bring this petition because it has not been "aggrieved" by the orders within the meaning of section 19(b) of the Natural Gas Act ("NGA"), 15 U.S.C. § 717r(b).

## BACKGROUND

Panhandle owns and operates an interstate natural-gas pipeline. Prior to the orders cited above, Panhandle also provided gathering services through facilities located in Colorado, Kansas, Texas, and Oklahoma ("the West End"). Through these gathering facilities, Panhandle collected gas from local wellheads and prepared it for delivery into the interstate pipeline.

In response to a changing regulatory environment, many interstate pipeline companies, including Panhandle, decided it was no longer advantageous to offer both gathering and transportation services. Several pipelines have sought authorization from the FERC to abandon gathering facilities, and transfer the facilities to corporate subsidiaries ("spin down"). A principal purpose behind spin downs is to create affiliate gathering companies not subject to FERC jurisdiction.[1]

On December 21, 1993, Panhandle filed a petition with the FERC requesting authorization to abandon its West End gathering facilities by transferring them to Field Services. R. Vol. IV. Concurrently, Field Services sought a declaratory ruling that its ownership and operation of the transferred gathering facilities would be exempt from FERC jurisdiction under section 1(b) of the Natural Gas Act ("NGA"), 15 U.S.C. § 717(b).

---

[1]For a thorough explanation of the spin down phenomenon, see Conoco Inc. v. F.E.R.C., 90 F.3d 536 (D.C. Cir. 1996).

First National, as well as many other parties, intervened in the Panhandle proceedings to protest the proposed spin down. First National is a natural gas producer with wellheads within the West End system. First National sells gas from these wellheads to independent marketers. These marketers then move the gas through the West End gathering facilities in preparation for its shipment on Panhandle's interstate pipeline.

First National's opposition to the proposed spin down was based on its fear that Field Services, as Panhandle's non-jurisdictional affiliate, would exploit its alleged monopoly control over certain West End gathering facilities. First National asserted that such exploitation previously had been denied to Panhandle only by FERC regulation. First National also alleged that Field Services was colluding, and would continue to collude, with other Panhandle affiliates--Centana Gathering Company and Centana Energy--to manipulate the price and availability of West End gathering services.

The Commission rejected First National's protests, as well as those of the other intervenors, and issued a preliminary determination approving the abandonment and transfer of the West End gathering facilities from Panhandle to Field Services, and declaring that the transferred facilities were exempt from FERC jurisdiction. 70 F.E.R.C. ¶ 61,178. However, as a precondition to a final order, the Commission required, among other things, that Field Services offer a two-year default contract to Panhandle's existing gathering customers. 70 F.E.R.C. at 61,587. The Commission required that the default contract contain "terms and conditions consistent with those under which [Panhandle]

provides gathering service to its customers." Id. Rates charged under the default contract had to be the same as those previously charged by Panhandle. Id. The Commission explained that the availability of the default contract would allow existing customers a reasonable time in which to adjust to the spin down, id., and would "allow states sufficient time to implement policies deemed necessary in the absence of federal regulation of gathering." 71 F.E.R.C. at 61,731.[2] Subsequently, the Commission approved the default contract prepared by Field Services, and issued final authorization for the spin down. 71 F.E.R.C. ¶ 61,336.

Because First National sold its gas to a marketer, it was not an existing gathering customer of Panhandle, but Field Services offered First National the default contract anyway. R. Vol. II at 2709. First National refused the contract, and instead requested a reconsideration and rehearing of the Commission's previous orders. R. Vol. II at 2695. In that request, First National renewed its protests regarding the alleged collusion between Panhandle affiliates. First National also asserted that the default contract would not, in fact, provide for the same quality of service previously provided by Panhandle. The Commission denied the request for reconsideration and rehearing, 73 F.E.R.C. ¶ 61,137, and this appeal ensued.

---

[2]As an alternative to the default contract, the Commission provided that Field Services could obtain final authorization by demonstrating it had successfully negotiated individual contracts with the existing customers. 70 F.E.R.C. at 61, 587. Apparently, nearly all of the existing customers who have continued dealing with Field Services do so under default contracts.

## DISCUSSION

Section 19(b) of the NGA allows only parties "aggrieved" by FERC orders to seek review in the court of appeals. 15 U.S.C. § 717r(b); Colorado Interstate Gas Co. v. F.E.R.C., 83 F.3d 1298, 1300 (10th Cir. 1996). To be considered "aggrieved" under section 19(b), a party must demonstrate a "present and immediate" injury in fact, or "at least . . . a looming unavoidable threat" of injury, as a result of the FERC order. Williams Gas Processing Co. v. F.E.R.C., 17 F.3d 1320, 1322 (10th Cir. 1994) (quoting National Ass'n of Regulatory Util. Comm'rs v. F.E.R.C., 823 F.2d 1377, 1381 (10th Cir. 1987)). The petitioner bears the burden of alleging facts sufficient to prove a concrete, perceptible harm of a real, non-speculative nature. Colorado Interstate, 83 F.3d at 1301. Furthermore, it is not sufficient for the petitioner to show merely that harm will result; the petitioner must show that judicial abstention would result in irreparable injury. Id.

We find no evidence in the record that First National has suffered, or will unavoidably suffer, an economic injury as a result of the Commission's orders. First National was not a gathering customer of Panhandle prior to the spin down, and it is not now a gathering customer of Field Services. Instead, First National continues to sell its gas to independent marketers and, under the default contract, these marketers continue to

receive the same gathering rates and services from Field Services as they previously received from Panhandle.[3]

Apparently, First National is interested in negotiating its own gathering contract with Field Services, and complains that the Commission's orders make it impossible to obtain satisfactory terms. Yet, First National has always had the option of accepting the default contract, which would ensure the same service and rates provided by Panhandle prior to the Commission's orders. R. Vol. II at 2708-12.[4]

---

[3]During the pendency of this appeal, the D.C. Circuit held that the Commission does not have the authority to require non-jurisdictional gatherers to offer default contracts. Conoco, 90 F.3d at 552. That ruling, however, does not affect this appeal. Unlike the parties in Conoco, Panhandle and Field Services did not challenge the Commission's authority to require the default contract, and many default contracts have already been executed. Furthermore, at oral argument, counsel for Field Services affirmed that Field Services has "embraced" the default contract, and that Field Services still offers shippers the option of extending the contract.

[4]First National contends in its briefs that the default contract does not, in fact, offer the same service previously provided by Panhandle. First National complains that the contract does not provide the same balancing services, and that "producers are actually assuming more operational risk and increased administrative costs, while paying higher rates." Appellant's Br. at 27. We find no support in the record for these contentions. First National cites only to unsupported assertions of counsel, and to items not included in the record provided to us. Indeed, the only record evidence on the issue that we have located demonstrates that services provided under the default contract do not differ in any material way from those previously provided by Panhandle. R. Vol. II at 2708-12 (Aff. of William D. Gifford).

Because shippers now deal with Field Services for gathering, and Panhandle for transportation, these shippers may, of course, incur some slight increase in the administrative costs associated with transacting with two companies instead of one. However, First National provides no evidence establishing the amount of such additional costs, if any, and we have no reason to assume they would be anything other than de minimis.

Finally, First National's fear that Field Services will behave in a monopolistic and discriminatory manner at the end of the default term is only speculation. While First National contends that such behavior is likely, it has not persuaded us that it is unavoidable. This court has already stated that speculation regarding the future behavior of a non-jurisdictional gathering affiliate is insufficient to confer standing. In <u>Williams Gas Processing</u>, we explained:

> [Petitioners'] fear that Williams will charge unreasonable rates is only speculation for now, and even if it materializes, they can challenge the reasonableness of Williams's rates under section 5, 15 U.S.C. § 717d. At most, the Commission's orders may make bringing a section 5 action less convenient . . . .
>
> We hold that this alleged inconvenience in seeking a remedy for a possible injury is not the kind of present or unavoidable, concrete "aggrievement" entitling [Petitioners] to challenge the Commission's orders.

17 F.3d at 1322-23. For the same reasons, we hold that First National is without standing to bring the present petition. As the Commission explained, should First National suffer some future harm as the result of a gatherer's unlawful activities, First National may resort to state law, federal antitrust law, a section 5 proceeding, or any other available remedy.

Petition DISMISSED.